Carroll,
May 2, 1939. } No. 3016.

SARAH E. HALL *v.* MERRIMACK MUTUAL FIRE INS. CO.

SAME *v.* ORIENT INSURANCE CO.

SAME *v.* NEW YORK UNDERWRITERS INS. CO.

SAME *v.* ATLAS ASSURANCE CO., LTD.

*Cooper & Hall (Mr. Cooper* orally), for the plaintiff.

*Thorp & Branch (Mr. Branch* orally), for the defendants.

ALLEN, C. J.   All defendants take the position that the evidence was insufficient to show that the fire was not set by someone engaged therefor by the plaintiff or acting with her knowledge and consent. Pursuant to the charge, to which no objection was taken, the jury were entitled to find otherwise.   It was not unreasonable to infer a situation which may be thus summarized.   The plaintiff was the mistress of one Norwood, who established her in the house which the fire destroyed and on whom she depended for her support.   While he is referred to as her other self, more appropriately he was her executive manager.   He had general charge of her affairs and in her business matters she was under his guidance.   For some time before the fire his ability to support her waned, but not his interest in her. Outside the home and its contents her personal resources were negligible.

The fire was on March 1, 1937.   The plaintiff had left the home the preceding November, going to Portland, Maine, where Norwood lived, and hiring an apartment, with no definite plans for returning, and continuing to occupy the apartment until after the fire.   In this situation, with the pressure on Norwood to provide her with funds for her maintenance, a conclusion was fairly to be drawn that he planned and caused the fire to be set, with no participation of the plaintiff in sharing incendiary guilt with him in any way.   Under such a view he acted, not as her agent, but as a stranger, with the motive to obtain funds for her, in his own stress and strain to furnish them, and with no disclosure to her of his undertaking.

It is true that during the seven months preceding the fire the insurance on the building and their contents was increased from $2700 to $4400, and that the plaintiff participated in some measure in seeking the increase.   But the business was all done by Norwood

and he made the required payments for the premiums and vacancy permits. Nearly all of the increase was on personal property. During the period the plaintiff received from Norwood the special books which were insured for $500, while the insurance on the general contents of the buildings was increased from $700 to $1800. The plaintiff testified that she had bought household furnishings during her occupancy of the house at a cost altogether of $2000, late in the summer before the fire took an inventory of all its contents, and was then prompted to take out more insurance upon them. The policy insuring them for $1800 was issued in November, a few days after the expiration of the one for $700. So far as the plaintiff took part in bringing about the increase of insurance, she is not to be charged thereby as matter of law with conspiring with Norwood to have the fire or with notice of his planning therefor. Her explanation for desiring more insurance was not necessarily to be rejected. Its doubtful validity was the jury's problem.

The claim that the plaintiff had no insurable interest in the property insured calls for slight discussion. If there is evidence that she held it in her name, but for Norwood as the real and sole owner, the contrary evidence that it all belonged to her, in beneficial interest as well as legal title, is ample. So far as he paid for it or contributed towards its maintenance, it was consistent with the relations between them that it was to be hers by their mutual understanding and agreement, and in his concern for her material welfare.

It is asserted that the plaintiff testified falsely at the trial, and thereby attempted to defraud the defendants. If under her cross-examination with reference to her relations with Norwood she knew her answers were false, an intention to defraud thereby is not a conclusion which must be drawn. Her interest to shield herself and others from open disclosure in respect to matters not considered by her to be connected with the fire might well account for her dishonesty on the subject.

Another claim of the plaintiff's perjury relates to her testimony of a talk with the mortgagee of the home. The mortgage note called for quarterly payments of principal, none of which had been made, although the note had been in force for two years. The collateral issue whether the mortgagee was satisfied to let the payments be deferred or asked that they be met bore remotely on any principal issue. If a demand for payment had some tendency to add to the economic pressure weighing on the plaintiff, and thus add to the evidence of a motive to have a fire, it is not demonstrated that she

deliberately testified falsely to induce belief in the absence of motive. And it is fairly conceivable that the mortgagee as a woman talking with another woman as her debtor, may not have been insistent in her demand, with a conclusion that the plaintiff, in some confusion of recollection, did not intentionally falsify.

The plaintiff testified in cross-examination that after the fire she had not attempted to ascertain what her income had been for the few years before the fire, immediately afterwards testifying that she had. So far as appears, she had no reliable records from which to show the sources and amounts of her income and she had no accounting mind. It is consistent from her apparently contradictory testimony that she had given up an initiated and desultory effort. She testified that it was "a very hard thing to do." If it is assumed that one of her statements was knowingly false, it is not an enforced conclusion that it was made as an attempt to defraud. The inquiry into her income was in connection with her claim of purchases of household furnishings for the home. But it is not a substantiated charge against her that she realized the claim was weakened by a non-disclosure of the sources and extent of her resources. A reading of her testimony indicates that her logical processes of thought were weak.

The plaintiff's variations in her testimony bearing on the length of time she expected the home would be closed when she left it to go to Portland late in the fall before the fire, do not convincingly show any design to deceive, and her inaccuracies of statement upon the subject are not enough to require a finding of attempted fraud. One construction of her testimony is that if she lived there another winter, or returned during the winter after she left, she would not do a task which the winter imposed. It is not unreasonable to infer that she left the place with no definite plan for returning, and the uncertainty may explain the uncertainty of her testimony.

The plaintiff made out a proof of loss of $2900 for the general contents of the house. The insurance thereon was $1800. The proof included some articles taken away from the home before the fire. The evidence did not show that they had much value. The plaintiff testified that she was sick when the proof was prepared, with Norwood's assistance and under his direction. There was also evidence that the insurance adjuster was informed by the plaintiff about the removal of the articles. The articles might be found to have been included in the proof of loss by unintentional error. The case of *Saidel* v. *Society*, 84 N. H. 232 is readily to be distinguished.

There a claim of loss exceeding the actual loss over and above the insurance was made to lull the insurer into acceptance of a loss as much as the insurance. *Ib.*, 234. The evidence here does not demand such a conclusion.

The plaintiff owned 120 copies of a book entitled Sketches of Brooks History, turned over to her by Norwood, the author of the book, in payment of a loan. As bearing on their value, evidence was introduced of an order given Norwood prior to his sale of them to the plaintiff for 100 copies at a stated price. The person alleged to have given the order testified in denial of giving it, and, on cross-examination, in denial of having made at one time a statement to the effect that he would give it. Subject to exception, a rebuttal witness was allowed to testify that he heard the statement.

The evidence was collateral to the issue of the order for 100 copies, and that issue was collateral to the issue of value. So far as the evidence discloses, the order for the books was not a completed contract, but an offer to buy them which Norwood never accepted. When Norwood sold them to the plaintiff in the year before the fire, the sale had the effect of non-acceptance of the order. He put it out of his hands to fill the order; the order as an offer made only to Norwood was not negotiable and had no legal analogy to a covenant running with property. It was apparently assumed at the trial, however, that the plaintiff was entitled to the benefit of the order and that she and Norwood were one in respect thereto with the result that the order evidenced the value of the books at the time of the fire, whereas in fact their value at that time had no measure of an outstanding offer for them. But even under the law of the trial it was not competent to rebut the denial of the statement that the order would be given. The statement was testified to as made six years before the order, and as an inducement in Norwood's behalf, to obtain a public appropriation for the book. Considering the occasion for making it, its relevancy to show the order is too remote to be of forceful service. It was not a promise to Norwood and at most indicated no more than a purpose subject to change by time and circumstance. It was offered as evidence in rebuttal of the testimony denying it, and not as evidence to show the order. The situation appears to be parallel with that in the case counsel have cited of *Lambert* v. *Hamlin*, 73 N. H. 138. The exception is therefore sustained.

The exception to the admission of evidence of a public appropriation for a number of copies of the book might be sustainable, but for

the admission of the evidence later in the trial without objection. *Kelly* v. *Simoutis, ante* 87. The public interest in a historical work resulted in a public appropriation for a limited number of copies, as an aid and means to secure its publication. The appropriation seems to be of doubtful relevance in any bearing on market value eight years later. The manuscript for the history was not then prepared, and the book was not published until several years afterwards.

The court instructed the jury that if "the insurance on the household goods was not fraudulently obtained, an excessive or unreasonable value set upon [them] . . . in the proof of loss does not prevent her recovery of their fair value unless the company was thereby misled." Fairly construed, and standing by itself, the instruction gave the jurors to understand that an unsuccessful attempt at fraud in overvaluing the goods in the proof of loss would not defeat the insurance. Later in the charge the court dealt at length with the subject of overvaluation, but in all of the elaboration on the subject there was no definite assertion to the effect that an unsuccessful attempt at fraud was a discharge of liability equally with a successful one. The result is that a specific instruction that an excessive value was immaterial if it did not mislead, was not qualified except by implication. The jury were instructed that an attempt to defraud forfeited the plaintiff's rights, but with no clear statement that it made no difference whether the attempt failed to accomplish its purpose. To a layman's mind, an excessive valuation naturally implies dishonesty. In any event, it relates to a case of dishonesty as well as to any other. The instruction that the insurer must be misled to defeat its liability therefore applied to dishonest attempts, and the later instruction that a dishonest attempt defeated liability, without specific statement that it need not serve its purpose, is considered inadequate to correct the error. To the layman's mind attempts to defraud might well be thought to be no bar to liability if they in fact did no harm.

From a logician's standpoint, and reading the charge in its entirety, a construction that it declared the outcome of a fraudulent attempt to be immaterial might well be adopted. But "there is probability that the language may have conveyed to the jurors an erroneous conception of the law," and "as it appears that it may have done so and as the matter was so presented to the court [by the exception] that the chance of an erroneous understanding might have been obviated by a brief [and clear] explanatory statement, the exception must be sustained." *West* v. *Railroad,* 81 N. H. 522, 533.

Upon the motion for a new trial, newly discovered evidence was

presented of Norwood's confession that he paid a man money to set the fire. Both Norwood and the alleged incendiary testified in contradiction. The court was warranted in finding that a jury would not put belief in the evidence. It did not add to the evidence of the plaintiff's complicity in setting the fire, and it could properly be found that a new trial would not probably have a different outcome.

Also, evidence was presented that Norwood disposed of his automobile at a later time than he testified at the trial. He lived in Portland while the fire was at Conway in this state. Witnesses at the trial testified that he had been seen with his car at Conway on a few occasions not long before the fire. He denied having been there and produced evidence that he had disposed of the car late in the previous fall. At the hearing upon the motion the evidence was that he had not disposed of it until a week or two before the fire.

Upon the assumption that the new evidence deserved and probably would receive acceptance, it related to a wholly collateral issue. There was no evidence that Norwood was in Conway at the time of the fire. His presence there on occasions not long before it had no direct bearing to show his presence at the time of it. In no way did it bear on the plaintiff's complicity. As already has appeared, she was not chargeable for what Norwood did while not acting as her agent or with her knowledge and consent. The date of the disposal of his car is immaterial on the issue of his agency or of her consent. The court was warranted in the conclusion that the evidence was not material to the issue joined and that a different result would probably not be reached upon another trial. *McGinley* v. *Railroad*, 79 N. H. 320, 321, and cases cited.

*Judgments for plaintiff in first two actions:*
*new trials in the others.*

BRANCH, J., did not sit: the others concurred.