[No. 31293. Department Two. May 8, 1950.]

RALPH AMENDE, *Appellant,* v. THE CITY OF BREMERTON *et al., Respondents.*[1]

[1]Reported in 217 P. (2d) 1049.

*Ralph Purvis* and *James B. Sanchez,* for appellant.

*Merrill Wallace,* for respondents.

HAMLEY, J.—Ralph Amende brought this action to compel payment of the face value and accumulated interest on sixteen local improvement district bonds. These bonds, numbered 356 to 371, inclusive, had been issued in 1914 by local improvement district No. 42 (LID 42) of the city of Charleston. Each bond is in the amount of one hundred dollars, with interest at the rate of seven per cent per annum, and was payable December 24, 1923.

LID 42 had originally issued 375 of these bonds. Bonds numbered 1 to 324, inclusive, have been paid in full. Bonds numbered 325 to 355, inclusive, were owned by W. D. Perkins & Co. In 1924 that company began foreclosure

proceedings against certain lots in the district. The fore-closure sale was had on August 22, 1925, and confirmed on August 8, 1927. The city officials of Charleston thereafter considered that all outstanding bonds of LID 42, including those now held by Amende, had been canceled or paid by virtue of the Perkins foreclosure. This assumption proved to be erroneous, however, for reasons stated in the trial court's first memorandum decision.

In 1927, the city of Charleston became consolidated as a portion of the city of Bremerton. The latter city thereby assumed all duties, obligations and benefits of Charleston in matters pertaining to LID 42 and other then existing Charleston local improvement districts. Bremerton, at that time, also acquired and assumed the management of a local improvement guaranty fund (sinking fund) which Charleston had established pursuant to Laws of 1925, chapter 183.

This fund was maintained for the purpose of purchasing lots bearing delinquent assessments which had been acquired by the county on tax foreclosure. Lots so purchased were resold. After reimbursing the sinking fund for the purchase price which had been advanced, any balance remaining from such sales was then divided, *pro rata,* between the one or more local improvement district funds represented by liens against such lots. Very few local improvement district bonds were paid at par under this arrangement. City officials had entered into agreements with most of the bondholders of each district, under which the latter had agreed to accept forty, fifty, or sixty per cent of the principal and interest in full settlement.

After acquiring this sinking fund, Bremerton, during the years 1930 to 1943, continued to operate it in the same manner. However, on the supposition that all LID 42 bonds had been disposed of by the Perkins foreclosure, none of the proceeds of the sales financed out of the sinking fund were prorated to LID 42. When the sale proceeds were more than enough to pay the costs and assessments (except assessments for LID 42) against the lots involved in the sale, the unused amount was returned to the sinking fund. This

sinking fund was closed by ordinance on December 3, 1944. The balance then remaining in the fund was transferred to Bremerton's general fund.

Amende purchased his sixteen LID 42 bonds in 1945 from Peoples Bank and Trust Company of Seattle, paying four hundred dollars for them. He had learned, about a year previous thereto, that none of the profits on the sinking fund sales had been transferred to LID 42, and that Bremerton had denied liability for payment of the bonds. There is no evidence that the preceding holders of the bonds had knowledge of these matters.

For the purpose of enforcing payment of these bonds and accumulated interest, Amende instituted this proceeding on May 6, 1946, by filing an application for a writ of mandate. The writ applied for would direct Bremerton, and the city treasurer of Bremerton, to pay into LID 42 a sufficient sum of money to pay relator's bonds and accumulated interest. The proceeding came on for trial and resulted in findings of fact and conclusions of law in favor of relator. The findings recite, among other things, that the ratable share of LID 42 in a lawful distribution and apportionment of the proceeds of the sinking fund sales is more than sufficient to have paid relator's bonds in full. This finding was based primarily upon an agreed exhibit which showed the proceeds of each such sale, how they had been .applied, and the outstanding LID 42 assessments, with accumulated interest, then standing against each lot sold.

A writ of mandate was thereupon issued, dated June 1, 1948, ordering Bremerton and the city treasurer to pay into LID 42 (apparently out of Bremerton's general fund) the sum of $1,990, representing principal and accumulated interest on the sixteen LID 42 bonds. The writ also provided that, when this sum was received by LID 42, it was to be paid to relator upon delivery and surrender of the bonds in question.

An appeal was taken to this court. We dismissed the appeal for the reason that no judgment had been entered by the trial court in support of the writ of mandate. *State*

*ex rel. Amende v. City of Bremerton,* 33 Wn. (2d) 321, 205 P. (2d) 1212, decided May 2, 1949. In our opinion we said, among other things:

"While, as above stated, the appeal must be dismissed, in view of the fact that the case is still pending before the superior court, it seems appropriate to suggest that the decisions of this court in the cases of *Quaker City Nat. Bank of Philadelphia v. Tacoma,* 27 Wash. 259, 67 Pac. 710; *Jurey v. Seattle,* 50 Wash. 272, 97 Pac. 107; *Perkins v. South Bend,* 133 Wash. 349, 233 Pac. 655; and *State ex rel. Rand v. Seattle,* 13 Wn. (2d) 107, 124 P. (2d) 207, may have some bearing upon questions inhering in this litigation.

"In making this observation, we do not express any opinion whatsoever on the question suggested."

The matter again came on for hearing before the trial court, at which time additional evidence was received and argument was had relative to the status of Bremerton as a city of the first or second class and regarding the charter provisions of that city respecting the filing of claims. This evidence showed that Bremerton was a city of the second class prior to October 6, 1942, on which date it became a city of the first class. The city charter adopted on that date contained no provision relative to the filing of claims. On December 6, 1947, which was subsequent to the commencement of this proceeding, the city charter was amended to require that claims be filed within thirty days after accrual.

After receiving this additional evidence the trial court entered "Corrected Findings of Fact and Conclusions of Law," and a judgment dismissing appellant's application for a writ of mandate. This second appeal now before us was then taken.

At the outset, respondents question whether mandamus is a proper remedy to enforce payment against the general fund of a city in a case of this kind. In this connection, respondents assert that there is no showing that any funds belonging to LID 42 were diverted to the general fund of Bremerton. While this action was instituted as a mandamus proceeding, appellant has treated it, on this appeal, as an action at law for damages. Respondents do not appear to object to this treatment, but present several arguments

in support of the judgment, if the action is to be so consid-. ered. Accordingly we will consider the case as if it were an action at law for damages against Bremerton.

The trial court's memorandum decision and conclusions of law indicate that the cause of action was dismissed for the following two reasons: (1) Appellant had failed to comply with a statutory requirement relative to the filing of a claim with the city prior to instituting the action; and (2) the general three-year statute of limitations applies to this cause of action and had run prior to the commencement of the action. Appellant's first assignment of error challenges these two rulings.

Actions seeking recovery of funds alleged to be wrongfully diverted from special assessment funds are regarded as "claims for damages" and are accordingly subject to applicable statutory and charter provisions relating to the filing of claims. *Jurey v. Seattle,* 50 Wash. 272, 97 Pac. 107; *Perkins v. South Bend,* 133 Wash. 349, 233 Pac. 655; *State ex rel. Rand v. Seattle,* 13 Wn. (2d) 107, 124 P. (2d) 207. Appellant has at no time filed a claim with Bremerton relative to the sixteen bonds now in question. It is therefore necessary to determine whether, under the circumstances of this case, there were applicable statutory or charter provisions requiring the filing of a claim as a condition precedent to beginning suit.

Appellant purchased these bonds in 1945 and had known, for a year previous thereto, that Bremerton denied liability. There is no evidence that any prior holder of the bonds ever had notice of Bremerton's refusal to honor the bonds, or the reason therefor. Appellant began this action on May 6, 1946. During all of this time Bremerton was a city of the first class with a charter which did not require the filing of claims as a condition precedent to bringing action. There is no statutory requirement that claims be filed with cities of the first class. Rem. Rev. Stat., § 9478 [P.P.C. § 368-1], relating to the filing of claims with such cities, applies only where the city has a valid charter provision requiring such filing. Accordingly, if this cause of action accrued in 1944, when appellant learned of this diversion of LID 42 funds for

the first time, or in 1945, when he acquired the bonds, it must be held that there is no statutory or charter provision relative to filing claims which applies to this cause of action. On the other hand, if the cause of action accrued at the time of the diversions, all but one of which took place between 1930 and 1942, a different result would be reached. Between 1927 and 1942 Bremerton was a city of the second class, and so then subject to Rem. Rev. Stat., § 9481 [P.P.C. § 394-1]. This statute requires that claims for damages against cities or towns of the second, third or fourth class be presented and filed within thirty days after the time when such claims for damages accrued.

Our court has twice expressed the view that claims for the recovery of money wrongfully diverted from a special assessment fund do not accrue, within the meaning of statutory or charter provisions relating to the filing of claims, until the claimant has knowledge of such diversion. In *Jurey v. Seattle, supra,* we affirmed a judgment dismissing such an action, because there had been a failure to file any claim with Seattle, the charter of which city required such filing. Under this charter provision, as in the case of Rem. Rev. Stat., § 9481, the claim was required to be filed within thirty days after the time "when such claim for damages accrued." But, in taking this action, we said:

"This being an action for damages, a claim therefor should have been filed within thirty days after knowledge of the diversion of the fund, as provided for by the section of the charter above quoted." (p. 276.)

In a later case involving a similar question, and similarly disposed of, we expressed the same opinion. *Perkins v. South Bend, supra.* We therefore conclude that, in so far as Rem. Rev. Stat., § 9481, relating to the filing of claims, is concerned, this cause of action did not accrue at least until the diversion of funds came to appellant's notice in 1944. Since it is not shown that the previous holder had knowledge of the diversion, it may be that the claim statute did not become operative against appellant until he came into possession of the bonds, regardless of his prior knowledge of

the defect; but this is a point which we do not need to decide. There was no applicable statutory or charter provision relative to the filing of claims in force between 1944 and the date this action was filed, and accordingly the action cannot be dismissed because of the failure to file such a claim.

This brings us to the question of whether the action is barred by the general three-year statute of limitations. The applicable statutes read as follows:

"Actions can only be commenced within the periods herein prescribed after the cause of action *shall have accrued,* except when in special cases a different limitation is prescribed by statute; but the objection that the action was not commenced within the time limited can only be taken by answer or demurrer." (Italics ours.) Rem. Rev. Stat., § 155 [P.P.C. § 73-1].

"Within three years: . . .

"2. An action for taking, detaining, or injuring personal property, including an action for the specific recovery thereof, or for any other injury to the person or rights of another not hereinafter enumerated. . . ." Rem. Rev. Stat. (Sup.), § 159 [P.P.C. § 73-11].

■ Actions seeking recovery of money alleged to be wrongfully diverted from special assessment funds, are subject to this statute of limitations. *Quaker City Nat. Bank of Philadelphia v. Tacoma,* 27 Wash. 259, 67 Pac. 710. But is the statute applicable under the facts of this particular case? It is applicable if the cause of action "accrued" at the time of the diversions, for all but one of them occurred more than three years prior to the filing of the complaint. The statute is not applicable if the cause of action "accrued" when appellant first had notice of the diversions. He learned of the diversions in 1944, and brought suit within three years—on May 6, 1946. In so framing the issue we are passing, as unnecessary to decide in this case, the question of whether the statute of limitations could begin to run until the claimant came into possession of the bonds, even though he had prior knowledge of the diversion.

A review of our past decisions indicates that this court has reached the same conclusion with respect to the

time the action accrues in the case of the statute of limitations as it has in the case of statutory or charter provisions pertaining to the filing of claims with municipal corporations. Where a local improvement district warrant holder brings suit against a city, claiming that the special fund has been depleted by wrongful payment of subsequently issued warrants, we have held that the statute of limitations does not begin to run until the plaintiff had notice of the wrongful depletion. *New York Security & Trust Co. v. Tacoma,* 30 Wash. 661, 71 Pac. 194; *Northwestern Lbr. Co. v. Aberdeen,* 35 Wash. 636, 77 Pac. 1063; *Heman v. Ballard,* 40 Wash. 81, 82 Pac. 277; *Northwestern Lbr. Co. v. Aberdeen,* 44 Wash. 261, 87 Pac. 260. We have ruled to like effect where the local improvement district warrant holder alleges that the city has failed to pay into the special fund the city's proportion of the cost of the improvement. *University State Bank v. Bremerton,* 86 Wash. 261, 150 Pac. 439.

This same principle has been applied in an action brought by local improvement district bondholders, where the bondholders did not have notice until shortly before bringing the suit that the balance remaining in the special fund had been transferred to the general fund. *Keyes v. Tacoma,* 12 Wn. (2d) 54, 120 P. (2d) 533. A like result has been reached where a local improvement district bondholder did not know that the city had, several years previously, depleted the special fund by making wrongful refunds to assessment payers. *Longview v. Longview Co.,* 21 Wn. (2d) 248, 150 P. (2d) 395.

Our reasoning in these cases has been that, with respect to local improvement district funds, the city stands in the position of trustee for the bond and warrant holders. Accordingly, we have applied the general rule that the statute of limitations begins to run against a *cestui que trust* from the time the latter acquires knowledge of the trustee's violation or repudiation of the trust. See, especially, *New York Security & Trust Co. v. Tacoma, supra* (p. 663); *Keyes v. Tacoma, supra* (p. 57); *Longview v. Longview Co., supra* (pp. 254-255). This view has special force in a case such as we have here, where the balance remaining in the

special fund has been transferred to the city's general fund. A similar situation was presented in the *Keyes* case, and we there said:

"The general rule is that, when a trustee repudiates the trust and claims to hold the estate as his own, and such repudiation and claim are brought to the knowledge of the *cestui que trust* in such manner that he is called upon to assert his rights, the statute of limitations shall begin to run against him from the time such knowledge is brought home to him, and not before." (p. 56.)

While the cases referred to above relate to diversions from local improvement district funds, the same principles apply in the case of local improvement guaranty funds of the kind involved in the instant case. With regard to both kinds of special funds, the city is in the position of trustee. Moreover, while this action involves the misapplication of local improvement guaranty funds, it also involves, as a part of the same transactions, the failure to make proper credits to the local improvement district fund here in question. In this respect, the case before us is like *University State Bank v. Bremerton, supra,* where the city failed to pay into the special fund certain moneys to which that fund was entitled. We there held that the statute of limitations did not begin to run until the claimant had knowledge of the wrongful withholding.

We hold that appellant's first assignment of error is well taken, and that the court erred in dismissing the action because of appellant's failure to file a claim with the city, or because of the supposed running of the statute of limitations. It is unnecessary to consider the remaining assignments of error.

The trial court, as indicated above, determined at the first hearing that the sum of $1,990, consisting of principal on the sixteen bonds and interest at the rate of seven per cent per annum as called for in the bonds, was owing to appellant. The trial court also determined at that time that there had been sufficient proceeds from the sinking fund sales to pay this sum. The original findings and conclusions to this effect were not carried forward into the

"corrected" findings of fact and conclusions of law entered after the second hearing. No additional evidence or argument was received at the second hearing bearing upon the amount due appellant or the extent of the diversions. It is therefore clear that the only reason these recitals were not included in the "corrected" findings is that they were not pertinent to the issues relative to the filing of a claim and the running of the statute of limitations, which issues the trial court, at the second hearing, considered controlling. As previously noted, the finding as to the extent of the misapplication of sinking fund profits was based upon an agreed exhibit. For these reasons, we believe that this case may be disposed of without the necessity of taking further evidence or the entry of additional findings of fact and conclusions of law.

The judgment of dismissal is reversed as to respondent city of Bremerton and affirmed as to respondent George L. Nutter. The trial court is directed to enter judgment for appellant, against respondent city of Bremerton, in the amount of $1,990, plus an amount equal to seven per cent interest on $1,600 from the date of the original writ of mandate, June 1, 1948, until the date of entry of the judgment here directed, payable upon appellant's delivery and surrender of bonds Nos. 356 to 371, inclusive, of local improvement district No. 42.

ROBINSON, MALLERY, and HILL, JJ., concur.

SIMPSON, C. J., dissents.