Hillsborough,
Feb. 4, 1930.

MYER SAIDEL, *Assignee,*

*v.*

THE UNION ASSURANCE SOCIETY, L'T'D.

*Myer Saidel* and *Timothy F. O'Connor* (*Mr. Saidel* orally), for the plaintiff.

*Thorp & Branch* (*Mr. Branch* orally), for the defendant.

ALLEN, J. If the plaintiff attempted fraud by making a false proof of loss intentionally, it was a defence to the action, and one question here presented is whether the evidence of the attempt was conclusive to show it.

The policy by its terms was to be void "if the insured shall make any attempt to defraud the company, either before or after the loss." The fraudulent act may be a dishonest statement about the loss, and the success of the attempt is immaterial. *Follett* v. *Insurance Co.*, 77 N. H. 457. And a principal is chargeable with the fraud of his agent while acting in his behalf. *Concord Bank* v. *Gregg*, 14 N. H. 331; *Norton* v. *Bank*, 61 N. H. 589, 592. Accordingly, if either the plaintiff or Mitchelson, his agent and the chief beneficiary of the insurance at the time, intentionally overvalued the property burned and the plaintiff sought to have the defendant pay the full insurance on it, the defendant was released from liability. And if a false statement is made recklessly with a conscious indifference as to its truth and without caring whether it is true or false, its fraudulent character is made out. *Graham* v. *Weber*, 79 N. H. 393, 395; *Shackett* v. *Bickford*, 74 N. H. 57.

The policy insured the stock in trade of a retail clothing store for $2,800 and the fixtures for $200. In the proof of loss the fixtures as itemized were valued at $360. They included some articles of personal wearing apparel belonging to the plaintiff's agent who assisted him in making the appraisal which was incorporated in the proof of loss. The plaintiff must have known that they were neither fixtures nor stock in trade which the policy insured. No explanation of their inclusion by mistake or otherwise was offered. And the item was submitted to the jury as a part of the claim. In the proof of loss there were other items of fixtures appraised at $85 and not belonging to the plaintiff. So far as appears, the items were not withdrawn from the claim until the trial. The plaintiff testified that he did not discover until after the appraisal was made that the articles did not belong to him and should not have been included. But his agent who helped him take the items for the appraisal and who valued them for the purpose knew they were the property of other persons, and gave as the only reason for including them that the owners were going to hold him and the plaintiff responsible for them. He also testified that he told the plaintiff at the time they were appraised that they were not his. He must have known that the policy did not insure property in which the plaintiff had no interest. The appraisal also included 504 suit hangers valued at $126. When the plaintiff acquired his title about four months before the fire he had a disinterested expert appraise the stock and fixtures, and in the appraisal then made there were 200 hangers valued at $2.

Regarding the stock, the only fair inference from the testimony is that only such items of the stock were appraised after the fire as could be and in fact were counted from the remnants and traces that the fire left of them. By this testimony the plaintiff is bound. *Harlow* v. *Leclair*, 82 N. H. 506. The appraisal shows that this testimony cannot be true. It included a substantial number of furs and fur-pieces which in common knowledge must have been wholly consumed in such a fire as this so as to make their detailed counting after the fire impossible. The appraisal also included among its items 5 dozen belts, 5 of suspenders, 10 of gloves, 10 of neckwear, 6 of caps, 45 of collars, 10 of shirts, 2 of sweaters, 25 of underwear, 10 of cuff links, 4 of scarf pins, 10 of cotton hose, 5 of golf hose, 5 of silk hose, and 5 gross of collar buttons. With the furs a value of about $1,100 was placed upon them. It may not fairly be said that many if any of these items could be counted separately piece by piece to make up their totals.

Taking the appraisal of the stock as a whole, the fire appraisal values with negligible exceptions were greatly in excess of the previous one, although the plaintiff thought both were made out at cost prices. And in a number of items either the fire appraisal showed greater quantities than appeared in the earlier appraisal or the items were not listed at all in the latter, although the stock had been meanwhile substantially depleted without replacements beyond a cost of $29.11.

The plaintiff knew that his agent who helped in taking the fire appraisal, while an expert, was the principal party interested in the proceeds of the insurance. He knew of the substantial depletion of the stock between the first appraisal and the fire. He had the first appraisal which was taken by a disinterested expert. Regardless of its real accuracy, he had relied upon it and regarded it as accurately showing values on a basis of cost. He took no pains whatever to check the fire appraisal with this earlier one and to obtain explanation of the discrepancies of quantities and values. With a disinterested appraisal taken before the fire when accuracy of quantities was readily obtained, he ignored it in favor of an interested appraisal after the fire which practically destroyed everything.

To cover the cost, as the plaintiff testified, he had the stock insured for $2,800, although he understood at the time that its cost value was not over $2,400 as shown by the earlier appraisal. The fire appraisal of the stock, after its reduction by four months of sales, totaled about $4,000.

While the falsity of the testimony about the manner of the taking of the fire appraisal is demonstrated, the plaintiff remains concluded by it. As to him, the result follows in inevitable conclusion that he made up a proof of loss on a pretended basis of counted items only, and since items in substantial amount were included which could not have been counted, he knew of its false taint. And since he could not have counted all the items appraised, the record is lacking in any evidence that all the items were lost by the fire. He therefore included in the list of the property destroyed by the fire items that he had no evidence were in it, aside from his reckless indifference to an accurate ascertainment of values. No other purpose for his conduct than to defraud the defendant may be inferred from it. It may not be said that because there could be no recovery above the amount of insurance, any valuation in excess of it was harmless and of no consequence and might be so regarded by the plaintiff. The greater the excess, the more likely the defendant would be put off its guard and not question a value up to the amount of the insurance.

With full allowance for honest difference of opinion in arriving at values, the evidence required the conclusion that both the plaintiff and his agent were at least consciously indifferent as to the truth of their appraisal in respect to the amount of the stock and fixtures if not as well as to the value that was placed upon them; and in its use in the proof of loss fraud was attempted. No fair and honest effort was made to obtain a fair and honest list and value of the property. The plaintiff tried to collect the whole amount of the policy regardless of honest belief that he was entitled to it, and representations being made without consideration of their truth or falsity, attempted fraud became demonstrated when their falsity was shown.

The jury's verdict placed a value of $2,000 on the stock and fixtures at the time of the fire with an allowance of about $100 for salvage. The verdict would serve only to strengthen the evidence of overlisting and overvaluation and of the plaintiff's conscious indifference to the truth of the proof of loss. But as the evidence of the verdict was not before the trial court when the motion for a directed verdict was made, it has not here been taken into account.

The result renders it unnecessary to consider the case further.

*Judgment for the defendant.*

BRANCH, J., did not sit: the others concurred.