[No. 53003-3. En Banc. June 9, 1988.]

MUTUAL OF ENUMCLAW INSURANCE COMPANY, *Respondent,*
v. CLINTON C. COX, *Appellant.*

*Delay, Curran, Thompson & Pontarolo, P.S.,* by *Joseph P. Delay,* for appellant.

*Huppin, Ewing & Anderson, P.S.,* by *Robert F. Ewing,* for respondent.

*William R. Hickman* and *Pamela A. Okano* on behalf of Washington Defense Trial Lawyers Association, amici curiae for respondent.

GOODLOE, J.—The defendant, Dr. Clinton C. Cox, appeals a judgment n.o.v. in favor of the plaintiff, Mutual of Enumclaw Insurance Company (MOE). The trial judge ruled that Cox's fraud voided his insurance policy regardless of MOE's bad faith in processing the claim. We affirm.

Cox purchased from MOE a homeowner's insurance policy covering his Clear Lake, Washington, house. The policy provided coverage for $137,000 worth of unscheduled personal property in addition to coverage for the dwelling, appurtenant structures, scheduled personal property, and living expenses.

On December 7, 1984, fire destroyed Cox's Clear Lake house and all property therein. On the same day, Cox met with MOE adjuster John Scrivener. Scrivener recommended to Cox that he employ Loree Claassen to assist him in preparing an itemized inventory of his unscheduled personal property. On January 31, 1985, Cox submitted to MOE a proof of loss form on his policy including a 143–page inventory list. The claim for unscheduled personal property and for personal property moved to Clear Lake prior to the fire from other Cox properties totaled $324,420.

This amount greatly exceeded the $137,000 of unscheduled personal property coverage.

On February 25 to 28, 1985, Homestake Salvors sifted the debris left by the fire. On March 8, 1985, MOE received Homestake's report which contained information that Homestake found no trace of certain items claimed lost, valued at approximately $35,000 to $40,000, including items such as jewelry, a television, a video cassette recorder, and eight bronze sculptures. On March 11 and 20, 1985, MOE deposed Cox to discuss the missing items. Cox denied that he tried to defraud MOE, but admitted to making numerous mistakes on the inventory list. Meanwhile, MOE had made partial payments on the policy, including the following:

| | |
|---|---|
| December 7, 1984 | $5,000 for personal property |
| January 15, 1985 | $10,000 for personal property |
| February 27, 1985 | $5,000 advance on fire loss |
| March 12, 1985 | $140,500 payment to lienholders on Clear Lake house |
| March 27, 1985 | $3,291.77 additional living expenses |

On April 2, 1985, MOE commenced a declaratory judgment action against Cox on the Clear Lake policy. MOE claimed that the entire policy was void because Cox violated the policy's anti–fraud provision. The anti–fraud provision reads as follows:

> Misrepresentation, Concealment or Fraud—This entire policy is void if, whether before or after a loss:
> a. An insured has willfully concealed or misrepresented:
> 1) any material fact or circumstance concerning this insurance; or
> 2) an insured's interest herein.
> b. There has been fraud or false swearing by an insured regarding any matter relating to this insurance or the subject thereof.

Clerk's Papers, at 7. Cox denied the charge and counterclaimed that MOE, in processing his claim, dealt in bad

faith and committed numerous unfair and deceptive practices and violations of RCW 48.01.030, RCW 48.30.010, WAC 284–30–300 *et seq.,* and RCW 19.86.020.

On August 22, 1985, the Spokane County Superior Court entered the following rulings on Cox's motion for partial summary judgment that: (1) even where the actual loss exceeds the policy limits, fraud is material and voids the policy; (2) as a matter of law the insurance policy was not severable and, therefore, fraud would void the entire policy; and (3) as a matter of law there was no waiver or estoppel resulting from interim payments by MOE to Cox.

The case proceeded to trial. During voir dire, counsel for Cox read a list of witnesses' names and asked the jurors to respond if they knew any of the witnesses. Juror Kathy Rohrback knew of but did not personally know defense witness Mark Vovos, so she did not respond. Other jurors, in post–trial affidavits, claimed that Rohrback showed a definite bias against Vovos and that she tried to persuade the other jurors to deny Cox recovery. Rohrback, in her own post–trial affidavit, disputed these statements and claimed that she was not biased against Vovos.

At the conclusion of the trial, the jury returned a verdict for Cox, answering the relevant special interrogatories as follows:

Question No. 1: Did the defendant commit fraud or false swearing regarding any matter relating to his insurance?
Answer: ___x___ Yes _____ No
. . .
Question No. 3: Did the insurance company waive its right to deny payment to the defendant by its acts or conduct?
Answer: _____ Yes ___x___ No
Question No. 4: Is the insurance company estopped by its acts and conduct from voiding the insurance policies?
Answer: ___x___ Yes _____ No

Question No. 5: Did the plaintiff insurance company act in bad faith in the handling of defendant's claim under the provisions of the Consumer Protection Act?
Answer: __x__ Yes _____ No
. . .
Question No. 6: Was such a violation a proximate cause of any damage sustained by the defendant?
Answer: __x__ Yes _____ No
Question No. 7: Did the plaintiff violate the provisions of the Washington Administrative Code?
Answer: __x__ Yes _____ No
. . .
Question No. 9: What damages, if any, is defendant entitled to as pertains to the following elements?
. . .
(3) Unscheduled personal property less the amount heretofore advanced on unscheduled personal property of $20,000.00 and not to exceed $117,000.00; plus prejudgment interest at 12% per annum[:] $50,000.00 + 12%
. . .

Clerk's Papers, at 1721–22. The interrogatories did not list the specific Washington Administrative Code provisions that the jury found MOE had violated.

On MOE's post–trial motion, the trial court granted a judgment n.o.v. to MOE. The court held that Cox's fraud precluded his use of estoppel. Cox appealed the trial court's decision to this court. We accepted direct review.

There is ample evidence from the trial record that Cox committed fraud by including numerous items on his inventory list which were not at his Clear Lake house when the fire occurred. Some of these items claimed lost, such as jewelry and the bronze sculptures, should have been found during the sifting. Cox attempted to defraud MOE.

■ Although Cox's actual personal property loss exceeded the unscheduled personal property policy limits, we hold that Cox's fraud was material. *See Henricksen v. Home Ins. Co.,* 237 Or. 539, 392 P.2d 324 (1964); *Mazzella v. Hanover Fire Ins. Co.,* 114 W. Va. 728, 174 S.E. 521 (1934); *Saidel v. Union Assur. Soc'y,* 84 N.H. 232, 149 A. 78

(1930); *Beyer v. St. Paul Fire & Marine Ins. Co.*, 112 Wis. 138, 88 N.W. 57 (1901); *Capital Fire Ins. Co. v. Beverly*, 14 Ohio C.C. 468 (1897); *Dolloff v. Phoenix Ins. Co.*, 82 Me. 266, 19 A. 396 (1890). The rationale behind these decisions is that "the insured should be penalized for the wilfulness of his conduct regardless of the fact that the insurer would not have been required to pay any greater amount had the falsity not been demonstrated." Annot., 16 A.L.R.3d 781 (1967).

Cox contends that the fraud was immaterial because his fraud did not prejudice MOE since it bore no risk of additional loss. *See Jensen v. Palatine Ins. Co.*, 81 Neb. 523, 116 N.W. 286 (1908). We do not find this argument persuasive. Insurance companies rely on insureds honestly filling out inventory lists of destroyed property. Dishonesty by insureds cannot be ignored.

■ Cox contends that his fraud should only void that part of his policy dealing with unscheduled personal property. He asserts that contracts are severable when performance by each party can be divided into equivalent parts. *See Baffin Land Corp. v. Monticello Motor Inn, Inc.*, 70 Wn.2d 893, 425 P.2d 623 (1967). Whether a contract is entirely divisible depends largely on its terms and on the intention of the parties disclosed by its terms. *Saletic v. Stamnes*, 51 Wn.2d 696, 321 P.2d 547 (1958).

The court, on pretrial motion, ruled that as a matter of law the policy was not severable. This reasoning seems to be based on the language of the policy. Section 6 of the policy contained the following language:

This entire policy is void if . . .

. . .

b. There has been fraud or false swearing . . .

Clerk's Papers, at 7. Many courts have upheld the same or similar provisions. *St. Paul Mercury Ins. Co. v. Salovich*, 41 Wn. App. 652, 705 P.2d 812, *review denied*, 104 Wn.2d 1029 (1985); *Farm Bur. Town & Country Ins. Co. v. Crain*, 731 S.W.2d 866 (Mo. Ct. App. 1987); *Chaachou v. American Cent. Ins. Co.*, 241 F.2d 889 (5th Cir. 1957); *Claflin v.*

*Commonwealth Ins. Co.,* 110 U.S. 81, 28 L. Ed. 76, 3 S. Ct. 507 (1884). The clear language of Cox's policy provided that it was not severable. Cox's material fraud voided the entire Clear Lake policy, and he is not entitled to any recovery.

Cox contends that MOE induced his fraud because MOE did not aid Cox in filling out his inventory list of unscheduled personal property. Although the jury's special interrogatories did not designate the specific Washington Administrative Code provisions that MOE violated, Cox claims that MOE violated WAC 284-30-360(4), which reads, in part:

> Every insurer . . . shall promptly provide necessary claim forms, instructions, and reasonable assistance so that first party claimants can comply with the policy conditions and the insurer's reasonable requirements.

While MOE did not assist Cox with compiling his inventory list, MOE did recommend that he hire Loree Claassen for assistance.

If Cox's misstatements had simply been errors in remembering what property was at Clear Lake, then clearly no fraud would have occurred. However, Cox deliberately claimed that numerous expensive items had been destroyed although he knew that the items were not in the house at the time of the fire. We find no merit in Cox's claim that MOE induced his false statements.

Cox contends that MOE waived any right to void his policy, because MOE knew of Cox's false statements by late February 1985, but still made partial payments on the policy to Cox on February 27, March 12 and 27, 1985. Cox claims that MOE had a duty to notify him that it knew of his misstatements. Since we hold that MOE had no affirmative duty to inform Cox that it believed he had committed fraud, it is not necessary to determine when MOE actually concluded that fraud had occurred.

■ Moreover, a party claiming estoppel must have proceeded in good faith and with "clean hands". 31 C.J.S. *Estoppel* § 75 (1964) discusses the clean hands doctrine:

The doctrine of estoppel is for the protection of innocent persons, and only the innocent may invoke it. . . .

A person may not base a claim of estoppel on conduct, omissions, or representations induced by his own conduct, concealment, or representations, especially when fraudulent.

(Footnotes omitted.) 31 C.J.S. at 453–54. In this case, Cox's fraud led to MOE voiding his insurance policy. Cox did not have clean hands.

Washington follows the rule that the doctrine of equitable estoppel is available to innocent parties only. *Christman v. General Constr. Co.,* 2 Wn. App. 364, 467 P.2d 867, *review denied,* 78 Wn.2d 994 (1970). We see no reason to deviate from *Christman.*

Cox further contends that since MOE did not take exception to the jury instruction discussing estoppel, estoppel became the law of the case. *See State v. Price,* 33 Wn. App. 472, 655 P.2d 1191 (1982); *Seattle v. Harclaon,* 56 Wn.2d 596, 354 P.2d 928 (1960).

■ This is not the typical case where a party failed to except to a jury instruction. MOE moved prior to trial to bifurcate the fraud action from the bad faith counterclaim. MOE wanted to have the fraud action heard first because it believed that if Cox's fraud voided the policy, then the bad faith counterclaim would not need to be heard. The motion was denied. During the trial, the court requested that MOE draft the special interrogatories because Cox was having difficulty drafting them. MOE incorporated the estoppel theory into the interrogatories only because the court required it to do so. Finally, MOE objected to the estoppel instruction. However, MOE excepted on the grounds that there was not sufficient evidence to find estoppel. We agree that MOE should have excepted once again on its prior position that a finding of fraud precluded Cox from invoking estoppel. However, MOE's actions throughout the litigation supported its position, and both the court and Cox knew its position. We hold that it would be inequitable to

penalize MOE for a harmless technical error; the estoppel instruction did not become the law of the case.

We recognize that the special interrogatories to the jury were incorrect. Once the jury found that Cox had committed fraud, it should have stopped its deliberations and not considered whether Cox could invoke estoppel.

■ Nevertheless, the court finally realized that Cox's assertion of estoppel was improper and correctly gave a judgment n.o.v. in favor of MOE. "The purpose of the judgment notwithstanding the verdict is to give the trial judge a last opportunity to correct errors." 10 L. Orland & D. Reaugh, Wash. Prac. 260 (1971) (citing *Brown v. Alkire,* 295 F.2d 411 (10th Cir. 1961)). The court properly used the judgment n.o.v. to correct the misstatement of law in the special interrogatories.

Cox contends that a finding of fraud should not preclude his recovery of damages for MOE's Consumer Protection Act (CPA) violation based on its bad faith and failure to comply with Washington Administrative Code provisions. Cox asserts that allowing the insurer to escape liability under the CPA will be catastrophic for the consumer and that the CPA's purpose is to protect insureds from actions such as MOE's bad faith.

■ However, the purpose of the CPA will not be served by awarding damages, attorney fees, and costs to Cox after he tried to perpetrate a fraud on MOE. Furthermore, legal mechanisms exist to punish insurers guilty of CPA violations since insurers are subject to the enforcement powers of the State Insurance Commissioner. We consider this regulation by the Insurance Commissioner to be an adequate deterrence against bad faith by insurance companies. We need not further punish MOE when to do so would provide a windfall to one guilty of fraud.

MOE cites *Safeco Ins. Co. of Am. v. JMG Restaurants, Inc.,* 37 Wn. App. 1, 680 P.2d 409 (1984) as analogous to the present case. In *Safeco,* the trial court bifurcated the trial, and considered separately the issues of whether the defendant–insured committed arson and whether the

plaintiff–insurer had acted in bad faith in handling the claim. The arson phase was heard first. The court said: "Had respondent [insured] lost the first phase of the case there could not have been any recovery on the Consumer Protection Act claim." *Safeco,* at 20. We find *Safeco* persuasive.

The CPA exists to protect consumers, not to aid and abet fraud. We hold that Cox is not entitled to recovery under the CPA.

Cox contends that MOE was improperly granted partial summary judgment since Cox's motion was phrased, "Motion for Partial Summary Judgment in Favor of Clinton C. Cox". Clerk's Papers, at 116. Cox cites *Leland v. Frogge,* 71 Wn.2d 197, 427 P.2d 724 (1967), in which the court held that granting summary judgment in favor of the nonmovant was improper where the nonmovant made no counterclaim and his opponent admitted no debt.

In reality, MOE and Cox together agreed to bring the motion, and Cox volunteered to prepare the motion. The parties were seeking resolution summarily on issues based on facts to which they agreed. Although the motion may have been phrased as Cox's motion, we find that the rulings were proper because both parties were seeking resolutions to those issues.

Cox contends that juror Kathy Rohrback's alleged misconduct deprived him of a fair trial. He asserts that Rohrback should have responded when asked if she knew witness Mark Vovos because she knew of him and was biased against him. Cox maintains Rohrback's nonresponse was a materially false answer and, therefore, he is entitled to a new trial. *See Smith v. Kent,* 11 Wn. App. 439, 523 P.2d 446 (1974).

In *Smith,* the Court of Appeals held that juror misconduct occurred where a juror revealed to the other jurors knowledge that went to the key issue of the suit. The present case is not analogous to *Smith* because, even if Rohrback influenced the jury against Vovos, his testimony did not go to the issue of fraud or any other material issue.

Vovos testified that he sold Cox eight bronze sculptures for $10,000. The purpose of this testimony was to show that the bronze sculptures existed. MOE did not dispute this testimony; rather, it disputed Cox's allegation that the sculptures were destroyed in the fire. We hold that Rohrback's alleged misconduct was immaterial. Furthermore, we do not see how Cox was prejudiced by any alleged jury bias against him because the jury's verdict was in his favor. Cox lost because the court granted a judgment n.o.v. for MOE.

The trial court is affirmed.

DOLLIVER, CALLOW, and DURHAM, JJ., and BEVER, J. Pro Tem., concur.

DORE, J. (dissenting)—I dissent.

The majority holds that Mutual of Enumclaw's objection to the estoppel instruction was sufficient to preserve its right to argue that giving such instruction was error. The record does not support the majority's holding. MOE failed to comply with the requirements of CR 51(f); therefore, the estoppel instruction became the law of the case and is not subject to challenge in a post–trial motion or on appeal. As MOE failed to properly preserve this issue for appeal, I would not reach the merits of this case.

### ESTOPPEL INSTRUCTION

The trial court instructed the jury on the doctrine of estoppel. Instruction 50; Clerk's Papers, at 1682. The court also provided the jury with a special verdict form. Special interrogatory 1 provides:

> Question No. 1: Did the defendant [Cox] commit fraud or false swearing regarding any matter relating to his insurance?

Clerk's Papers, at 1721. The jury found that Cox committed fraud, and was then directed to answer interrogatory 4 which states:

> Question No. 4: Is the insurance company estopped by its acts and conduct from voiding the insurance policies?

Clerk's Papers, at 1721. The jury answered this question in the affirmative. Thus, the instructions permitted the jury to find that MOE is estopped from voiding the policies even if it found that Cox committed fraud.

MOE's counsel, in excepting to the trial court's estoppel instruction, merely stated: "plaintiff believes under the evidence there is no[t] sufficient evidence of estoppel to warrant that being submitted to the jury." Report of Proceedings vol. 19, at 1667–68. MOE took no exception to the special interrogatories incorporating Cox's estoppel argument.

CR 51(f) provides that in objecting to instructions, counsel "shall state distinctly the matter to which he objects and the grounds of his objection . . ." The rule requires that exceptions to instructions apprise the trial judge of the precise points of law or questions of fact in dispute and the reason why giving the instruction would be error. The purpose of the rule is to enable the trial judge to correct any mistakes before the case is submitted to the jury. *Stewart v. State,* 92 Wn.2d 285, 298, 597 P.2d 101 (1979); *Nelson v. Mueller,* 85 Wn.2d 234, 237–38, 533 P.2d 383 (1975).

The majority holds that a challenge to an instruction on a ground different from that argued at trial can serve as the basis upon which a trial court can grant a judgment notwithstanding the verdict. Majority, at 651–52. This is not the law.

The law is settled. An objection must apprise the trial judge of the precise points of law involved and when it does not, those points cannot serve as a basis for a post–trial motion for a new trial or judgment notwithstanding the verdict. *Egede–Nissen v. Crystal Mt., Inc.,* 93 Wn.2d 127, 134, 606 P.2d 1214 (1980); *Bitzan v. Parisi,* 88 Wn.2d 116, 125, 558 P.2d 775 (1977); *Agranoff v. Morton,* 54 Wn.2d 341, 346, 340 P.2d 811 (1959); *see Reed v. Pennwalt Corp.,* 93 Wn.2d 5, 6–7, 604 P.2d 164 (1979). Here, MOE's motion for a judgment notwithstanding the verdict was based on a different objection to the estoppel instructions from that argued at trial. At trial, MOE argued that the evidence did

not support the estoppel instruction. After a verdict for Cox, MOE argued that instructing on estoppel was error as a matter of law because the jury's finding that Cox committed fraud precluded his right to claim estoppel. The trial court committed reversible error when it granted a judgment notwithstanding the verdict based on an objection to instructions that was not first raised at trial. *See Bitzan,* at 126; *Agranoff,* at 347.

The majority concedes that MOE's objection failed to satisfy the requirements of CR 51(f). Majority, at 651. The majority nonetheless contends that MOE has properly preserved the issue of estoppel for consideration on appeal. The majority reasons that the trial judge knew MOE's position with respect to estoppel and therefore MOE's failure to properly object is a "harmless technical error". Majority, at 651.

The majority first argues that MOE preserved this issue for appeal because MOE in a pretrial motion moved to bifurcate the fraud action and the bad faith counterclaim on the ground that Cox's fraud would void the policy. The majority ignores the fact that the pretrial motion to bifurcate was argued before a judge other than the trial judge. The majority next argues that MOE's failure to properly object should be excused because the trial judge instructed MOE to draft the special interrogatories incorporating the estoppel theory. This argument is without merit. Although MOE prepared the special interrogatories at the court's direction, this does not relieve MOE of its duty to properly except to the court's instructions and to provide the court with instructions that accurately state the applicable law. *Harris v. Groth,* 99 Wn.2d 438, 447, 663 P.2d 113 (1983). Finally, the majority points out that MOE did object to the estoppel instruction. MOE's objection at trial was inadequate. It did not specifically apprise the court that Cox was not, as a matter of law, entitled to an estoppel instruction if the jury concluded that he committed fraud.

I find no support in law or the facts for the majority's holding that MOE properly preserved its right to object to

the estoppel instruction. The *trial judge* was never adequately advised of the precise points of law involved or given the opportunity to correct the error before the case was submitted to the jury and a verdict returned. As a result, this court is precluded from considering the estoppel issue on appeal. *Stewart,* at 298; *Haslund v. Seattle,* 86 Wn.2d 607, 614, 547 P.2d 1221 (1976); *see* RAP 2.5(a).

MOE took no exception to the special verdict form and its objection to the estoppel instruction was inadequate. The jury's finding of estoppel, therefore, became the law of the case. *Garcia v. Brulotte,* 94 Wn.2d 794, 797, 620 P.2d 99 (1980); *Bitzan,* at 125; *see Seattle v. Harclaon,* 56 Wn.2d 596, 597, 354 P.2d 928 (1960). Consequently, the law in this case is that Cox is entitled to claim estoppel as an affirmative defense and that MOE is estopped from voiding the policies based upon Cox's fraud. Because MOE is estopped from voiding the policies, the jury's verdict for Cox awarding damages under the policies and the Consumer Protection Act must be reinstated.

CONCLUSION

Under CR 51(f), an objection to an instruction based on grounds not argued at the time of trial cannot be considered by either a trial court on a post–trial motion or by this court on appeal. Yet this was precisely the same factual situation here. The trial court cannot grant a motion for judgment notwithstanding the verdict based on grounds not argued during the trial. This was prejudicial error and such motion should be set aside.

I would reverse the trial court's judgment and reinstate the verdict for Cox.

PEARSON, C.J., and BRACHTENBACH and ANDERSEN, JJ., concur with DORE, J.

Reconsideration denied July 15, 1988.