[No. 30569-1-II.   Division Two.   March 22, 2005.]

LOREN JOHNSON ET AL., *Appellants*, v. ALLSTATE INSURANCE COMPANY, *Respondent.*

*Michael E. Ritchie* (of *Dolack, Hansler, Loran & Ritchie, Inc., P.S.*), for appellants.

*Rick J. Wathen* (of *Cole Lether Wathen & Leid, P.C.*), for respondent.

¶1 HOUGHTON, J. — Loren and Diana Johnson appeal a trial court's ruling that they must return funds Allstate Insurance Company paid to them. We affirm.

## FACTS

¶2 A fire destroyed the Johnsons' pump house on November 11, 2001. The Johnsons claimed that the fire burned an extensive tool and hobby collection.

¶3 Before the fire, the Johnsons insured the pump house through an Allstate "Deluxe Mobilehome Policy." Pl.'s Ex. 19. After loss notification, Allstate adjusters Mark Scott and Bill Scott handled the claim.

¶4 Mark Scott, a structure damage adjuster, paid $4,400.00 for the structure loss, $400.00 for tree damage, and $1,409.94 for tree removal and other landscaping damage. Bill Scott paid a $5,000 advance on the personal property claim.

¶5 The Johnsons submitted five inventory sheets to Allstate approximately one month after the fire. These inventory sheets listed the items the Johnsons maintained they replaced in December 2001. The Johnsons also submitted the receipts for the December purchases. The Johnsons further notified Bill Scott about additional items they expected to list.

¶6 On May 30, 2002, Mark Scott wrote to the Johnsons about his calculations based on structural repair and replacement costs, including:

1. The full cost of repair or replacement is. . . . . . . $10,070.40
2. The applicable depreciation is. . . . . . . . . . . . . . . $5,134.67
3. The actual cash value of the loss is. . . . . . . . . . $4,935.73
   (line 1 minus line 2)
4. Less deductible. . . . . . . . . . . . . . . . . . . . . . . . . . $250.00
5. Actual cash value claim is. . . . . . . . . . . . . . . . . . $4,685.73
   (line 3 minus line 4)

Pl.'s Ex. 9. The letter notified the Johnsons that they had to rebuild or replace the damaged property within 180 days of

Allstate's payment to recover an amount greater than the actual cash value. On May 31, 2002, Mark Scott sent a letter referring to the $5,000 personal property advance, but enclosing a check for the actual cash value of the structure loss claim.[1]

¶7 In July 2002, Allstate asked Diana Johnson to submit to an examination under oath for purposes of investigating their claim. Loren Johnson accompanied his wife to the examination under oath and once there "he was told that he also had to submit to an examination under oath under threat that the policy would be voided. He therefore submitted to an examination under oath on the same date." Appellant's Br. at 6.[2] Thereafter, the Johnsons submitted a complete, signed property inventory loss form.

¶8 By letter, Allstate declined to pay the Johnsons' final personal property claim. The letter quoted from the Johnsons' Allstate policy: "**We** do not cover an **insured person** who has concealed or misrepresented any material fact or circumstance relating to this insurance, before or after the loss." Pl.'s Ex. 14. In denying the claim, Allstate noted that

> Allstate's decision to deny your claim is based upon the conclusion that you have misrepresented and concealed material facts. You have also failed to comply with the obligations under your policy of insurance.
>
> . . . .
>
> Allstate has concluded that you have misrepresented and concealed material facts during Allstate's investigation of your insurance claim. For example, Mr. Johnson provided limited information as to when, where and how he purchased a majority of the claimed items during his examination under oath. This is further reflected in your sworn statement in [the] Proof of Loss. You also claim that a vast majority of the receipts for various items were destroyed in the fire. Furthermore, Mr.

---

[1] Allstate paid a total of $16,043.43 before it refused to pay based on misrepresentation and concealment.

[2] This is not part of the record. But the testimony of Rochelle Ptacek, an Allstate manager, refers to an examination under oath given by both Johnsons.

Johnson could not confirm when and for what purpose he used various tools. In addition, as a former quality control inspector and mechanic for Boeing, we do not find it credible that Mr. Johnson could not distinguish between two brands of tools (i.e. DeWalt and Ryobi) that are of considerably different price and quality. The foregoing are examples of the misrepresentations and concealments discovered to date. Allstate specifically reserves the right to provide further examples if necessary. Due to the fact that Mr. Johnson has misrepresented and concealed material facts, you are not entitled to any coverage.

. . . .

You have failed to comply with your duties and obligations under the policy of insurance by failing to timely produce a sworn statement in [the] Proof of Loss. This prejudiced Allstate's ability to fully investigate the validity of your claim. You provided Allstate with a partial, five page Proof of Loss in December 2001. Allstate did not receive a final sworn Proof of Loss until July 22, 2002. This delay impeded Allstate's ability to determine if there was coverage under your policy. Furthermore, you provided Allstate with an inventory of items that replaced your destroyed items. This resulted in tremendous confusion as you did not make it clear as to what items were replacing the destroyed items.

Pl.'s Ex. 14.

¶9 The Johnsons sued Allstate, claiming breach of contract, bad faith, negligence, and various statutory violations. Allstate pleaded an affirmative defense that the Johnsons "misrepresented and concealed material facts, thereby voiding coverage." Clerk's Papers (CP) at 8.

¶10 The matter proceeded to a jury trial. The jury answered a special interrogatory, namely:

**QUESTION NO. 1:** Did either Loren Johnson or Diana Johnson intentionally mispresent or conceal any material fact to defendant in connection with their claim under the insurance contract? Answer "Yes" or "No".

**ANSWER:** Yes

If you answer Question No. 1 "Yes", sign and return this verdict form. If you answer Questions No. 1 "No", answer Question Nos. 2, 3, and 4 below".

CP at 60. The jury answered "Yes" to Question No. 1 and, as instructed, did not answer the remaining questions about breach of contract, Consumer Protection Act, chapter 19.86 RCW, violations, or plaintiffs' damages. CP at 60-61.

¶11 Based on this finding, the court ruled that "Defendant is not liable and is entitled to judgment of dismissal with prejudice and costs, which will be taxed as provided by law; ADDITIONALLY, by operation of law, Plaintiffs are obligated to repay the $16,043.43 paid by Allstate during the adjustment of this claim." CP at 120. The court awarded Allstate a total judgment of $18,568.35 based on the above repayment, plus prejudgment interest and attorney fees.

¶12 The trial court denied the Johnsons' motion for reconsideration. The Johnsons appeal.

## ANALYSIS

### The Court's Decision

¶13 The Johnsons first contend that the trial court erred because it failed to submit Allstate's claim for monetary relief to the jury. They argue that because the jury was not informed of Allstate's counterclaim, "it was improper for the trial court to subsume the province of the jury and enter a monetary judgment for defendant Allstate." Appellant's Br. at 9. We disagree.

¶14 A court interprets a contract as a question of law. *Millican of Wash., Inc. v. Wienker Carpet Serv., Inc.*, 44 Wn. App. 409, 413, 722 P.2d 861 (1986). And the court, not the jury, decides questions of law, including "the construction of statutes and other writings." RCW 4.44.080; *Hastings v. Dep't of Labor & Indus.*, 24 Wn.2d 1, 13, 163 P.2d 142 (1945).

¶15 Here, Allstate's counterclaim and the Johnsons' claim encompassed the same basic issue: whether Allstate remained liable for the Johnsons' loss. This issue required a fact finder to decide whether the Johnsons intentionally concealed or misrepresented a material fact regarding their

claim. When the jury answered yes, it remained for the court to interpret the contract based on the jury's finding.

¶16 Nevertheless, the Johnsons assert that the court could not rule for Allstate absent the jury finding a causal connection between the payments Allstate made and the insureds' misconduct. Again, we disagree. The contract required that the Johnsons not intentionally conceal or misrepresent material facts. The question of causation has nothing to do with whether the Johnsons complied with the contract.[3]

## Return of Premiums Paid

¶17 The Johnsons next contend that if Allstate's coverage is voided by the Johnsons' concealments or misrepresentations, then Allstate is obligated to tender back the Johnsons' premium payments. The Johnsons cite *Gossett v. Farmers Insurance Co.*, 82 Wn. App. 375, 386, 917 P.2d 1124 (1996), *rev'd in part*, 133 Wn.2d 954, 974, 948 P.2d 1264 (1997). In *Gossett*, we held that an insurer must tender back the premium to would-be insureds when the policy "was never effected due to fraud or misrepresentation." 82 Wn. App. at 386. Our Supreme Court reversed in part, noting that Farmers Insurance was not seeking to rescind the contract and, therefore, it was not required to tender back the premium payments.[4] *Gossett*, 133 Wn.2d at 974.

¶18 Here, Allstate put the policy into effect and insured the Johnsons against fire loss, absent their misrepresentation or concealment. When the Johnsons concealed and misrepresented material facts regarding their loss,

---

[3] In their reply brief, the Johnsons argue that the trial court erred in ordering repayment because Allstate failed to establish the elements of fraud or the tort of negligent mispresentation. We do not address issues first raised in reply. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992); RAP 10.3(c) ("A reply brief should be limited to a response to the issues in the brief to which the reply brief is directed."). We note, however, that these arguments have no basis in this insurance contract case.

[4] The Supreme Court agreed that "[t]ender back of premiums paid is a condition precedent to maintaining an action to rescind an insurance policy on the ground of fraud or misrepresentation." *Gossett*, 133 Wn.2d at 974.

they voided their coverage. Thus, *Gossett* differs because there the fraud occurred in the formation of the contract, leaving the would-be insured without coverage. Here, the concealment and misrepresentation occurred during the loss reporting period. Simply put, the contract was valid when entered, but later voided by the Johnsons' actions.[5] Allstate was not required to tender back premium payments.

## Return of All Claim Payments

■ ¶19 The Johnsons further contend that Allstate is not entitled to reimbursement of all claim payments made. They assert that the policy language does not support such a remedy and, further, Allstate is not entitled to reimbursement because it did not tender premiums paid.[6] The Johnsons argue that even if the trial court correctly entered a judgment in Allstate's favor, the judgment should not have included the amount Allstate paid for structure loss and tree removal because the parties agree that the misrepresentation or concealment regarded only the personal property claim.

---

[5] Although they do not raise it as an assignment of error, the Johnsons appear to argue that *Oregon Mutual Insurance Co. v. Barton*, 109 Wn. App. 405, 36 P.3d 1065 (2001), *review denied*, 146 Wn.2d 1014 (2002), bars Allstate from recovering monies it already paid. In doing so, the Johnsons attempt to distinguish *Mutual of Enumclaw Insurance Co. v. Cox*, 110 Wn.2d 643, 757 P.2d 499 (1988).

In *Barton*, Division Three held that "misrepresentations by an insured after settlement, which could not have induced the settlement" did not void the policy. *Barton*, 109 Wn. App. at 409.

But this issue is governed by *Cox*, where our Supreme Court held that an insured's material misrepresentations during the settlement period voided the entire policy, even where the actual loss exceeded the coverage. *Cox*, 110 Wn.2d at 648-49.

The Johnsons also claim that because Allstate made payments, they are entitled to relief. Again, this issue is controlled by *Cox*. There, the court held that the insurance company had no affirmative duty to inform the insured of its belief that he committed fraud. *Cox*, 110 Wn.2d at 650. Thus, the company did not waive the right to void the policy simply because it knew of the insured's false statements but still made partial payments. *Cox*, 110 Wn.2d at 650.

[6] The Johnsons again rely on our decision in *Gossett*. As noted, *Gossett* does not apply to the Johnsons' tender-back argument.

¶20 The Allstate policy insured the Johnsons' personal property, mobile home, other structures, and landscaping. The exclusions based on material misrepresentation and concealment apply to all of the insured property, without differentiation. Because our Supreme Court has held that material concealment and misrepresentation void an entire policy when the policy cannot be severed by its plain language, the Johnsons' argument fails. *Mut. of Enumclaw Ins. Co. v. Cox*, 110 Wn.2d 643, 649, 757 P.2d 499 (1998).

## Citation to an Unpublished Opinion

¶21 Finally, the Johnsons argue that the trial court erred in relying on an unpublished opinion Allstate cited. Allstate attached the unpublished case of *Lindsey v. Mutual of Enumclaw*, noted at 116 Wn. App. 1012 (2003), *review denied*, 150 Wn.2d 1020 (2003) to its reply memorandum in support of its motion for judgment. Allstate explained:

> The relief requested . . . by Allstate in this matter is analogous to the procedure utilized by this Court in the matter of *Lindsay* [sic] *v. Mutual of Enumclaw*. . . . Allstate does not cite this matter as controlling authority pursuant to RCW 2.06.040 (2003 WL 1017248 Washington Appellate Division No. II, 2003). Attached hereto is a courtesy copy of the decision.

CP at 115 (note 1).

¶22 At trial, the Johnsons argued that Allstate improperly cited to an unpublished opinion.

¶23 The court explained:

> Well, it is an unpublished case, but it was my case at trial and it was my decision, so I'm sure [Defense Counsel] was aware of that when he attached it to his memorandum. And it's my understanding that that rule is going to be liberalized in the very near term, so I'm certainly not going to sanction him for citing that case.
>
> In that particular case, we asked the jury the question and the jury answered the question that Mutual of Enumclaw shouldn't get the money back, and it is a question of law.

I'm going to grant the relief to Allstate because I think it absolutely is a matter of law, and it's not a question of fact for the jury; it's the result when there's a finding made by the jury, specifically that there was misrepresentation.

Report of Proceedings (June 6, 2003) at 8-9.

¶24 We agree that Allstate improperly relied on our unpublished opinion and that the trial court also erred in relying on it. *See Skamania County v. Woodall*, 104 Wn. App. 525, 536 n.11, 16 P.3d 701, *review denied*, 144 Wn.2d 1021 (2001), *cert. denied*, 535 U.S. 980 (2002); RAP 10.4(h). And Allstate's self-serving comment that it did not submit the opinion as controlling authority under RCW 2.06.040 does not remove the taint from its inappropriate action. Because we affirm the trial court's ruling, the only remedy available to the Johnsons would be sanctions. *See Kenneth W. Brooks Trust A v. Pac. Media, L.L.C.*, 111 Wn. App. 393, 401, 44 P.3d 938 (2002); *Dwyer v. J.I. Kislak Mortgage Corp.*, 103 Wn. App. 542, 548-49, 13 P.3d 240 (2000), *review denied*, 143 Wn.2d 1024 (2001).

¶25 But Allstate did not cite an unpublished opinion to us, thus we are unable to impose appropriate sanctions. Nevertheless, we note with displeasure that Allstate ignored our long-standing prohibition against citing unpublished opinions,[7] and we strongly admonish Allstate to cease this practice of submitting unpublished opinions to the trial court in the guise of "noncontrolling authority." We long ago held that unpublished opinions are not part of Washington's common law. We do not consider unpublished opinions in the Court of Appeals, and they should not be considered in the trial court.[8] *Dwyer*, 103 Wn. App. at 548;

---

[7] *E.g., Kitsap County v. Allstate Ins. Co.*, 136 Wn.2d 567, 964 P.2d 1173 (1998); *Woodall*, 104 Wn. App. 525. In some very limited circumstances, a party may, however, cite an unpublished opinion for collateral estoppel or res judicata purposes.

[8] We should also note that in reviewing the unpublished opinion submitted by Allstate, the trial court apparently believed that rules about unpublished opinions were being changed. Although the Court of Appeals has, from time to time, studied and considered whether to "relax" these rules, it has not done so.

520

*State v. Fitzpatrick*, 5 Wn. App. 661, 668-69, 491 P.2d 262 (1971), *review denied*, 80 Wn.2d 1003 (1972).

¶26 Affirmed.

QUINN-BRINTNALL, C.J., and BRIDGEWATER, J., concur.