IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| WILLIAM DUSSAULT, as Litigation Guardian ad Litem on behalf of MATTHEW GRAY; ANDREA GRAY; and JIM GRAY,<br><br>Petitioner,<br><br>v.<br><br>WASHINGTON STATE UNIVERSITY; a subdivision of the State of Washington; and TAU KAPPA EPSILON FRATERNITY; an Indiana Corporation; TKE ALPHA GAMMA CHAPTER, aka ALPHA-GAMMA, an association; and TKE HOLDING GROUP ALPHA GAMMA CHAPTER; a Washington corporation; and ABC, DEF, GHI, JKL CORPORATIONS; and JOHN/JANE DOES,<br><br>Respondents. | No. 82525-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

ANDRUS, C.J. —William Dussault, the litigation guardian ad litem for Matthew Gray, and Matthew's parents, appeal the summary judgment dismissal of their claims against Tau Kappa Epsilon Fraternity and its affiliated entities for allegedly overserving alcohol to Matthew, an underage freshman at Washington State University, and causing him to sustain injuries from a fall from his dormitory window. We reverse the summary judgment and remand for further proceedings.

Citations and pin cites are based on the Westlaw online version of the cited material.

<u>FACTS</u>

In August 2017, 18-year-old Matthew Gray[1] started his freshman year at Washington State University (WSU). Matthew moved into a university-run residence hall, where he moved his bed against the window in his room. He also became a freshman pledge of the Tau Kappa Epsilon (TKE) fraternity.

On August 23, 2017, Matthew attended an off-campus party at the TKE fraternity house, where he drank alcohol and became intoxicated. Sometime before midnight, Matthew went back to his residence hall and encountered his Resident Advisor, Matthew Lomasney, who noticed Matthew was under the influence.

Shortly before 2 a.m. another resident, Aaron Cothard, returning to the dormitory, noticed Matthew curled up and sleeping against his second story window. A few seconds later, Cothard saw the window screen pop off and Matthew fall to the concrete below without reaching out to break his fall. Matthew sustained a traumatic brain injury, requiring extensive brain, cranial, and orthopedic surgeries and brain damage rehabilitation.

Matthew's litigation guardian ad litem, William Dussault, and his parents, Andrea and Jim Gray (collectively "Dussault") filed suit against both WSU and TKE for negligence.[2] Dussault alleged that TKE was negligent in knowingly serving alcohol to a minor. He alleged that WSU was negligent in permitting TKE to host parties at which students would engage in excessive alcohol consumption and

---

[1] We will refer to Matthew and his parents by their first names for clarity.

[2] Dussault named TKE Fraternity, an Indiana corporation, TKE Alpha Gamma Chapter, aka Alpha-Gamma, an association, and TKE Holding Group Alpha Gamma Chapter, a Washington corporation. We refer to these entities collectively as "TKE."

failing to warn freshmen of the hazards associated with the dorm windows and failing to train the resident advisors on these hazards and precautions needed to prevent student falls from heights.

Both TKE and WSU denied liability and asserted that other parties, including Matthew himself, were at fault. WSU specifically raised the affirmative defenses that Matthew's injuries were a result of his own negligence, RCW 5.40.060 barred liability because Matthew was under the influence of alcohol and more than 50 percent at fault, Matthew's injuries were caused by TKE, and any award to Matthew must be reduced by an amount equal to the percentage of fault attributable to non-parties.

TKE moved for summary judgment, seeking dismissal of Matthew's claims, because Dussault conceded in discovery that he had no evidence to prove that alcohol consumption was a proximate cause of Matthew's fall. Dussault did not oppose TKE's motion. In response, Dussault represented to the trial court that "there is no evidence that Matthew Gray's intoxication was a proximate cause of his injuries." Dussault submitted a declaration from Dr. Jennifer Souders, who reviewed the record and reported that on August 23, 2017, witnesses saw Matthew drinking, experiencing slurred speech, leaning against walls to walk, getting lost in his residence hall after the party, and needing the assistance of Lomasney to find a restroom to get water and vomit. Lomasney left Matthew in his room between 11:50 p.m. and 12:00 a.m. Matthew fell from his dorm window almost two hours later, at 1:49 a.m. Hospital records indicated that Matthew's blood serum level at

2:05 a.m. was 258 mg/dL.[3]  Dr. Souders computed his blood alcohol level to be 0.219 g/dL.

Dr. Souders opined that Matthew's "central nervous system was impaired to some degree at the time that he fell out of his dorm window and at the time that he was interacting with resident advisor Matthew Lomasney."  She also testified that "[o]n a more probable than not basis, [Matthew] would have had decreased physical and cognitive abilities compared to a sober person at the time of his fall."  Dr. Souders stated that Matthew likely experienced increased drowsiness, decreased perception, increased reaction time, increased sensory-motor incoordination, decreased balance, decreased memory, slurred speech and vomiting.  But she nevertheless "[could not] say on a more probable than not basis that [Matthew's] alcohol intoxication was a contributing factor to his fall."  She concluded that "even while accepting as true that [Matthew] had some degree of diminished physical and mental acuity at the time of the fall, there is no way to determine if this contributed to his fall."  She further opined that "no qualified medical professional could determine on a more probable than not basis, to a reasonable degree of medical certainty, whether alcohol intoxication was a contributing factor in [Matthew's] fall."

Dussault not only asked the trial court to "issue an [o]rder dismissing the TKE Defendants," but he also asked the court to preclude WSU from arguing or seeking to admit evidence at trial that Matthew's intoxication caused or contributed

---

[3] Dr. Souder testified that fatalities from alcohol poisoning are reported at blood serum levels that meet or exceed 400 mg/dL and that Matthew's level was not in the lethal range.

to his damages. Neither TKE nor Dussault moved to dismiss WSU's affirmative defenses.

On the same day Dussault requested the dismissal of claims against TKE, WSU submitted evidence in opposition to TKE's summary judgment motion. WSU submitted the declaration of Dr. Daniel Repplinger to establish the impact of Matthew's alcohol consumption that night. Dr. Repplinger testified that Matthew's blood alcohol concentration was 0.258 g/dL, over three times the legal limit to operate a motor vehicle, 0.08 g/dL. He recounted evidence that witnesses observed Matthew consuming alcohol beginning as early as 8:00 p.m. that evening and drinking high alcohol concentration malt beverages and beer throughout the night. Dr. Repplinger recounted testimony from Lomasney that Mathew lost his key card and forgot his password and needed 30 minutes to recall. He stated:

> Based on witness reporting and the BAC of [Matthew,] he was likely severely intoxicated at the time of the fall. A BAC of .258 can result in a variety of symptoms including disorientation, mental confusion, muscular incoordination, slurred speech, loss of motor function, decreased response to stimuli, impaired consciousness, and sleep or stupor. At the time of his fall, [Matthew] was neurologically and physically impaired by the alcohol he had consumed earlier that evening.

At the March 29, 2021 hearing, the trial court concluded that, by joining TKE's motion, Dussault had in effect chosen not to prosecute Matthew's claim against the fraternity. WSU pointed out that in addition to the dismissal of Matthew's claims against TKE, Matthew was also asking the court to "take the issue of intoxication away from the jury." At the conclusion of the hearing, the trial court concluded that the only motion before it was TKE's motion to dismiss Matthew's claims against the fraternity, that Dussault agreed to the dismissal of

those claims.  Based on that agreement, it granted TKE's summary judgment.  It further ruled that

> to the extent there is an effort here to also argue that nobody [with a claim] could prove TKE's failure to monitor and restrict the amount of alcohol that was served to the child in this case, [Matthew], that is something [that's] never going to be successful at summary judgment on this record. . . . [T]he evidence taken in the light most favorable to the nonmoving party, which here would be only, frankly, WSU defending its affirmative defense is that [Matthew] was over-served by a lot at a TKE function; that TKE's responsibility to monitor over-service should lead to people of [Matthew's] age wasn't fulfilled, and that [Matthew] was very, very intoxicated when he returned to his dormitory and he showed his impairment in a number of different ways to people who interacted with him. . . . So a jury could reasonably determine that a cause of [Matthew] going out the window and being badly injured was the fact that he was very drunk and because he had been over-served at a TKE function.  And that inference reasonably arises from this evidence, you know, partly because we have a clash of the experts, but mostly because that's what the evidence shows when it's construed in the light most favorable to a party that isn't TKE in this case.

It indicated its intent to sign an order "that simply indicates that without objection from plaintiff, TKE is dismissed form this lawsuit from plaintiff's claims" and that its ruling "does not in any way affect the viability of WSU's affirmative defenses, including its affirmative defense of TKE being negligent and over-serving [Matthew] . . . ."  In its written order, the court reiterated that it "[made] no findings of fact or conclusions of law regarding WSU's affirmative defenses or any other factual issue."

Dussault moved for reconsideration under CR 59(a)(7), arguing that the trial court should modify the order to reflect that TKE was dismissed on summary judgment and was thus a fault-free party against whom WSU could not seek to allocate fault under RCW 4.22.070.  Alternatively, Dussault argued that if the trial

court found a genuine issue of material fact as to TKE's liability, then it should not have granted summary judgment at all.

The trial court denied the motion for reconsideration, reiterating that the only motion before it was a motion to dismiss Dussault's claim against TKE, not a motion to dismiss WSU's affirmative defenses and it had granted TKE's motion solely on the basis that Dussault did not oppose it. The court noted that "[there are] significant material issues of fact as to plaintiff's intoxication and the causal relationship with his injury" and repeated that its ruling had "no effect whatsoever" on WSU's affirmative defenses.

Dussault asked the trial court to certify the orders for appeal under CR 54(b), or in the alternative, to certify the question for discretionary review pursuant to RAP 2.3(b)(4). The trial court denied this motion, stating: "For the final time, this Court granted TKE's motion for dismissal of plaintiff's claims against TKE because plaintiff did not oppose it. The Court did not reach or rule upon proximate causation. That an unopposed motion should be granted is not a matter that merits appellate review."

This court granted Dussault's motion for discretionary review.

<u>ANALYSIS</u>

Dussault argues that the trial court erred in dismissing TKE if it did not also foreclose WSU from seeking to allocate fault to TKE.

Appellate courts review a summary judgment order de novo and perform the same inquiry as the trial court. *Borton & Sons, Inc. v. Burbank Props., LLC*, 196 Wn.2d 199, 205, 471 P.3d 871 (2020). A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." CR 56(c). We consider all the evidence and reasonable inferences in the light most favorable to the nonmoving party. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). "A genuine issue of material fact exists when reasonable minds could differ on the facts controlling the outcome of the litigation." *Dowler v. Clover Park Sch. Dist. No. 400*, 172 Wn.2d 471, 484, 258 P.3d 676 (2011).

To prevail on his negligence claim, Dussault must show (1) the existence of a duty to the plaintiff, (2) a breach of that duty, (3) a resulting injury, and (4) that the breach of duty was the proximate cause of the injury. *N.L. v. Bethel Sch. Dist.*, 186 Wn.2d 422, 429, 378 P.3d 162 (2016). TKE sought summary judgment on the issue of causation. Dussault did not oppose that motion and, in fact, affirmatively requested the same relief TKE sought—dismissal of all claims against TKE.

If the trial court initially erred in dismissing TKE, Dussault invited that error. The invited error doctrine precludes a party from setting up an error at the trial court and then complaining of it on appeal. *Shavlik v. Dawson Place*, 11 Wn. App. 2d 250, 270, 452 P.3d 1241 (2019). The doctrine applies when a party takes affirmative and voluntary action that induces the trial court to take an action that the party later challenges on appeal. *Grange Ins. Ass'n v. Roberts*, 179 Wn. App. 739, 774, 320 P.3d 77 (2013). Despite finding a material question of fact, the trial court granted summary judgment to TKE because Dussault asked it to do so. Dussault, in responding to the TKE motion, wrote:

> TKE Defendants state [in] their Motion for Summary Judgment that "Plaintiffs have repeatedly and unequivocally admitted that [Matthew] was asleep at the time of the incident, was

not acting under the influence of alcohol and that alcohol did not cause or contribute to his fall." This is correct. *Plaintiffs admit that Matthew was intoxicated at the time of the subject incident. However, Plaintiffs are aware of no evidence supporting the contention that Matthew's intoxication caused or contributed to the subject incident.*

(Emphasis added.) Dussault "respectfully request[ed] that the Court issue an Order dismissing the TKE Defendants . . . ." Dussault cannot complain that the court erred in granting the summary judgment when he asked for that relief. *See Grange Ins. Ass'n*, 179 Wn. App. at 774 (a party cannot complain that the trial court dismissed a claim for the "wrong reason" when that party affirmatively asked the court to dismiss the claim and failed to argue the merits of the claim).

But the real issue is not the court's dismissal of TKE but the court's refusal to preclude WSU from seeking to apportion fault to TKE at trial. Dussault argued on reconsideration that the summary judgment order is a final judgment in TKE's favor, making TKE a fault-free entity to whom fault cannot be allocated as a matter of law under RCW 4.22.070. Apparently, Dussault believed that by not opposing TKE's summary judgment, he could in effect obtain a dispositive ruling undercutting WSU's main defense in the case.

The court clearly was not willing to allow Dussault to obtain such a legal ruling without Dussault properly putting the issue before it in a dispositive motion. The trial court correctly concluded that TKE's motion was the only motion properly before it. *See Doyle v. Lee*, 166 Wn. App. 397, 272 P.3d 256 (2012) (trial court had no opportunity to consider a motion that was not properly noted and therefore was not properly before that court). It was not an abuse of discretion to deny Dussault's attempt to obtain what is effectively a significant dispositive legal ruling

adverse to WSU when Dussault did not file a CR 56 motion to give WSU the time and opportunity to respond.[4]

But the trial court did abuse its discretion in not granting Dussault's motion for reconsideration when it became clear Dussault was not asking for a voluntary dismissal, and without a legal ruling that TKE was fault-free, wanted reinstatement of Matthew's claims against TKE. CR 59(a) permits a trial court to grant reconsideration of a decision that is "contrary to law." "Motions for reconsideration are addressed to the sound discretion of the trial court; a reviewing court will not reverse a trial court's ruling absent a showing of manifest abuse of that discretion." *Wagner Dev., Inc. v. Fid. & Deposit Co. of Maryland,* 95 Wn. App. 896, 906, 977 P.2d 639 (1999). But refusal to correct a legal error raised in a motion for reconsideration is an abuse of discretion. *Singleton v. Naegeli Reporting Corp.*, 142 Wn. App. 598, 612, 175 P.3d 594 (2008).

Here, the trial court correctly concluded that it could not deem TKE to be without fault as there are genuine issues of material fact as to whether TKE caused Matthew's injuries by overserving alcohol to him at a frat party.[5] In the hours leading up to the fall, TKE served Matthew, a minor, so much alcohol that he was unable to find his dorm room or walk unassisted. More than two hours after he left

---

[4] Relying on federal civil procedure rules, Dussault argues that no separate motion was required because the court had the "obligation to grant summary judgment whenever it is warranted, even if it is in favor of the nonmoving party." But under Washington law, granting summary judgment to the nonmoving party is only appropriate when both parties seek a resolution of a legal issue based on stipulated facts, *Mut. of Enumclaw Ins. Co. v. Cox*, 110 Wn.2d 643, 653, 757 P.2d 499 (1988), or when the moving party has admitted liability to the nonmoving party. *Leland v. Frogge*, 71 Wn.2d 197, 201, 427 P.2d 724 (1967). Neither circumstance exists here.

[5] Dussault contends that the trial court failed to give him the benefit of all the evidence in the record, which establishes a genuine issue of material fact and precludes summary judgment. Dussault never asked the court to deny the summary judgment based on WSU's evidence. He cannot raise on appeal an argument he failed to advance below. RAP 2.5(a); *Aventis Pharm., Inc. v. State*, 5 Wn. App. 2d 637, 650, 428 P.3d 389 (2018).

the party, his blood alcohol concentration remained somewhere between 0.218 g/dL and 0.258 g/dL—a level high enough to cause diminished physical and mental acuity. An eye witness saw Matthew fall from a second story window without reaching out to break his fall, from which a reasonable jury could conclude Matthew was in an alcohol-induced stupor. In discovery, Matthew conceded that "the alcohol in [his] system may have been a contributing factor to his fall." A reasonable jury could conclude that TKE's over-service of alcohol caused Matthew to become intoxicated, which caused his fall.

Dussault asked the court on reconsideration to reinstate Matthew's claims against TKE if genuine issues of material fact exist as to TKE's fault. Dussault made it clear that the premise on which the court based its summary judgment decision—that Dussault did not want to prosecute the claim against TKE—was erroneous. Because genuine issues of material fact exist and Dussault no longer sought to abandon Matthew's claims against TKE, the trial court abused its discretion in denying the motion for reconsideration.

We reverse the trial court's order granting TKE's motion for summary judgment and remand for further proceedings.

Andrus, C.J.

WE CONCUR:

- 11